States v. Spence. Mr. Patrick. May it please the Court, I'm Michael Patrick from Chapel Hill, North Carolina. I represent Demetrius Spence in an appeal from the Eastern District. I'm hearing a little echo. I'm not sure. You're okay. All right. I was appointed in connection with the appeal. I did not handle the trial. I am only planning to address the evidentiary issues raised in the brief. I'm not going to address the sentencing issues. The evidentiary issues that we raised in connection with the brief involved the admission into evidence over objection of three recordings of alleged undercover drug transactions and a recording involving communication between the defendant and his mother from the Piedmont Regional Jail where he was in pretrial custody. As we've outlined in our brief, the Fourth Circuit has adopted, in a general fashion, some guidance for the foundational requirements for admissions of tape recordings that were laid down in the Eighth Circuit in United States v. McMillan, but in United States v. Clark, it recognized that it was not going to adhere strictly. Was there an objection based on foundation made at the trial court? The government raised that in a footnote in its brief. There was foundation, or there were objections made to the introduction of each. Now, Rule 103... But not based on foundation. It was a general objection, Your Honor. Rule 103, of course, says, for preservation purposes... Was there any description? I mean, was it just objection? Was there any description of what the objection was based upon? Your Honor, we would argue that the context really spoke for itself in this case. I mean, what was being admitted were these recordings. At JA193, it was objection, the court says to both, and the trial counsel says, yes, sir. That's it. And the same at JA198, objection overruled. That's it. That's right. It's hard to take it out of context. Rule 103 obviously says you're supposed to say specific objections except where the context makes it obvious. And I would suggest that to experienced trial counsel, which was an experienced trial judge, that all were involved in this case, the only real objection that you have at this point to this type of objection, given the context or the point in the trial on each of these. Now, at the time of the PRC, the fourth tape recording, the trial counsel did make a somewhat more elaborate objection talking about lack of foundational requirement. That's as to the jailhouse? That's right. So if the general objection to the first two, we would likely review it under plain error. As to the third one, abuse of discretion, right? It really depends on how you apply Rule 103, because we do assert that it's obvious from the context, and therefore you do not have to make a very specific objection at that point. And when it raised that in a footnote, but if you look at United States v. Bullock, which is a 96 opinion of this court, the government was citing to the dissent in that case. The Judge Russell, who was in dissent, basically was saying we shouldn't address this because there was only a general objection that two judges, Judge Phillips and Judge Murnaghan, who were in the majority, weren't troubled by that, I think probably by the context of that and went ahead and dealt with those, even though it was apparently a very general objection. I think that's what we're dealing with again here, is that the objections that were made at trial, although they were nonspecific objections, given the context of what was going on at trial. And as a trial lawyer, I'm very used to listening to the litany of foundational things for recordings. You ask how it was made, have you identified it, have you examined the recording, is it accurate, do you recognize the voices? None of those questions were asked by the prosecutor, who was a very experienced prosecutor in this case, and it struck me when I was reading the transcript that, boy, this is like a traffic court case, not a federal district court case. They're just not going through the usual litany. And there's a reason you go through the usual litany, is that you don't always know that you're going to get the right answers. And the witness they were typically asking was not giving very good answers. So we don't really know what the answers to the usual questions would have been. But it seemed to be clear from the context that it had to go to the foundation, given the fact that there was no foundation, no usual litany being asked in this. The other thing I would point out that kind of highlights a reason that you don't want to skip over this is something that in fact did happen at the trial. Prosecutor Walker and as to another, this does not relate to the recordings, but there were motions unlimited to exclude evidence of prior acts as not 404 acts, and they were denied. And then they called an agent, Max Robeson, to testify to these prior acts. The prosecutor put on that testimony, and it wasn't until cross-examination that we learned that the witness had no personal knowledge, no personal recollection of these prior acts. He was an officer reading from somebody, other officers' reports from 12 years earlier. When that came out on cross-examination, the court struck that testimony. I can't believe that that was an accident from a prosecutor. I must have lost the thread. I'm sorry. You're on something other than the recordings now? Yes, sir. What I'm talking about is the importance of having the foundational questions in place, because you usually assume they're going to be answered correctly. I'm giving another... The example you just gave us, that doesn't have anything to do with the recordings. No, sir, but it has to do with some prior acts that the prosecutor called the witness who she must have known had no personal knowledge about these prior acts, put it on the direct testimony, didn't bother to establish that, and only in cross did it come out that this witness that the prosecutor had called had no prior knowledge of that. That's what happens when you don't go through the... That's what troubles me about these phone calls. We don't really know if the usual foundational questions had gone through, what exactly would have transpired. There was an error, and there was an objection made. I think we would contend that it's pretty obvious from context of that what the basis of the objection was, and that if you take a look at any of the cases that cited cases, you find that there was much more foundational basis for recordings than in this case. In this case, there was no testimony in most of the cases that the transcript was reviewed, that the recording was reviewed a couple times. Twice, the main witness said, yes, I reviewed the recording. They never testified that it was an accurate recording. They never identified the voices on it. There was no testimony about the nature of the recording Is that on JA 195 where he's asked, now that voice that you hear on that recording other than yours, do you recognize that to be Demetrius Spence? Yes. And then they go on. What about that? I think that's one of the three recordings. Okay, I thought I just heard you say he never identified any voices. There's like four different recordings, and I've got a sheet that I may have read on that. There was never any testimony, I think, about the preservation of the recordings, that whether they were identical to that, to the way they originally had been recorded. There was just lack of any of the normal chain of custody preservation. Now, they did more on the PRC recording, the Piedmont Regional recording. They did identify, they brought a separate witness in, Officer Winston, to identify the voices. They had some testimony about how the recordings were transferred, but there was really, and this was a situation where there was a much more elaborate recording system. At PRC, at the Piedmont Regional Jail, all the in-going and out-going calls were recorded somehow, probably on a computerized system. But there was no explanation of that, no explanation how you find a particular recording, how you even know it relates to a particular witness. But there was an identification, ultimately, of voices on that through Officer Winslow. But that went far beyond the nature of the identification that they used in connection with the other witnesses, or the other three recordings in this case. And we would suggest that it was not harmless, ERA, to admit these three recordings, certainly. The Bola case that the government cited in its brief is also instructive on that. They had a, that was a case that would not involve recordings, but involved prior consistent statements that the government put into evidence without having the witnesses impeached. And the court said that that was improper to do that, even though it was only a general objection made to that, in Bola. And the majority in that case said, well, if without those prior consistent statements, the remainder of the government's evidence, and that was a drug case, I believe, was a set of government witnesses of questionable veracity. Typical drug case, typical like this case, where there were, almost everybody testifying were admitted drug dealers who were trying to get help on various sentences or get their time cut. All of those other witnesses, without the benefit of the recordings that were really trying to document these particular transactions, the three substance of transactions, all the other witnesses were easily, or could be questioned fairly effectively as to what their motives for testimony were. Like in BOLIC, then BOLIC suggests that if you eliminate those recordings that, or that the admission of those recordings would not be harmless there. Certainly, DeRocca was someone who would be very questionable veracity without that kind of support. Your Honors, if you don't have any additional questions, I'll just reserve the rest of my time, or I have some time reserved for the rebuttal. Thank you. Thank you very much, Mr. Patrick. Thank you. And Ms. Shaw, why don't you give us your side of the story? May it please the Court, good morning. I'm Shalika Shaw, and I'm here on behalf of the United States. Now, in every case before this Court, it is imperative that common sense, reason, and logic not be thrown out the window, that the Court consider the context of what happened at the trial. As to the three recordings of the controlled bias, the witness, DeRocca Johnson, thoroughly set the background that the recording was of his meeting with the defendant on a specified date and a specified time. As to each of the three recordings on March 16th, March 19th, and March 30th, Investigator Winslow testified prior to Mr. Johnson, and also set the exact facts of what happened that Mr. Johnson wore a wire. Mr. Johnson testified that he understood that he was being recorded. He testified that he went to meet the defendant at a specified location, a specified time, and he testified that the recording was of his meeting with the defendant on that specific date. Further, as Judge Thacker pointed out, with regard to the first recording, the defendant's voice on that recording. By the time each of these recordings was introduced into evidence, it was clear to the jury and everyone in the courtroom that the recording was of the witness and of the defendant. To ask whether, for the prosecution to be required to ask, was that defendant's voice on that recording for each of those recordings would have been unnecessary and cumulative. The defendant, when the defense points out that the government didn't go through the proper litany of questions that we would ask in introducing these three recordings. Well, I beg to differ. Here, the government laid a proper foundation. According to Federal Rule of Evidence 901B5, the government had to show that it was the defendant's voice in the recording. For the reasons I mentioned, I believe the government did that. Further, the standard in this court requires that the defendant demonstrate that the foundation laid at the trial court was clearly insufficient to ensure the accuracy of the recording. This is a heavy burden. Here, if you look to the MacMillan factors, again, as we articulated in our brief, the MacMillan factors are not binding. The Fourth Circuit does not strictly adhere to the MacMillan factors, but rather looks at those factors in determining whether or not the foundation laid was clearly insufficient to ensure the accuracy of the recording. The MacMillan factors require that the defense was capable of recording, the operator was competent, that the recording was authentic and correct, there were no changes or deletions to the recording, the recording was preserved, and the speakers were identified. The conversation was voluntary. Your Honors, we submit that each one of those was met through the testimony of Investigator Winslow and through the testimony of Daroka Johnson. Again, Investigator Winslow set the scene. He told us that he enlisted Daroka Johnson to engage in controlled buys with the defendant. He then placed a wire on that defendant, my apologies, he placed a wire on that witness, Daroka Johnson. He monitored that wire, that recording for the duration of the transaction, that he never lost physical sight, he never lost any observation of the defendant during the three controlled buys, that afterwards he had a specific procedure for checking, for following the defendant and following the witness for checking his car, checking his person, and then ensuring the accuracy of those recordings in that way. Daroka Johnson then testified as to each of the three recordings that he was equipped with a wire, that he wore the wire to the transaction with Mr. Spence. At those drug transactions that he knew he was being recorded, that after those transactions at trial, that the recording was of that specific of the March 16th transaction, the March 19th, the March 30th, he initialed each of those CDs as being accurate. He listened to those CDs in conjunction with the transcripts and certified that the transcripts were accurate of the recording. As to the fourth recording, the Piedmont Jail recording, now the government presented two witnesses to testify as to the accuracy of this recording. First, it presented Lieutenant Ridley from the Piedmont Jail, and he testified that he was ordered to produce the recording of the defendant speaking with his mother, so recordings on a specific day of phone calls by the defendant. He produced the log, and he produced the recording. He described for the court how he searched the system by searching for the defendant's name on a particular date. He testified that the system was in working order with no errors. He didn't experience any problems creating the CD, and he did not note any malfunction with the system. Then at trial, he testified that he recognized the disc as the one that he had prepared, and the CD contained an accurate copy of the original recording. The government then put Investigator Winslow back on the stand, and had Investigator Winslow testify that he was familiar with the defendant's voice, and that he was familiar with the defendant's mother's voice, and that that recording contained the voices of the defendant and the defendant's mother. Again, this is proper, this, the government laid a proper foundation under Federal Rule of Evidence 901B5. Now, as to, I'm not going to address the defendant's second claim, as they've already conceded that this Court's opinion in United States v. Young would preclude its position in that opinion, in that, with regard to that claim. Moving to the defendant's third claim, which goes to sentencing. The defendant challenges the District Court's decision to not include the 1998 conviction, not consider it relevant conduct. Now, we would like to point out to the Court that the defendant started this case before trial, and during trial, maintaining, insisting that that 1998 conviction was completely unrelated to the offense in this case. He filed a motion in limine, specifically saying that the facts bear little similarity to the crimes alleged. There are no common witnesses, no confidential informants, or no common co-conspirators. It did not occur in the same location, and it did not involve the same methods of distribution. Conveniently, the defendant changed his position at sentencing, and objected to the inclusion of this as relevant conduct. Stating now that not only was it so... What was the government's position of that 1998 conviction during the trial? The government's position was that that 1998 conviction should be allowed under Rule 404B as an other act, an act extrinsic to the offense of the conviction. And specifically, the government did note in its motion to introduce this conviction as 404B, did identify certain similarities. It did identify that they were both drug transactions, that they did occur in Elizabeth City, and there was a sale to an undercover officer, similar to a confidential informant. And it was quite close in time to the conspiracy charged here. Well, the indictment charged the conspiracy starting in 2000. However, the statements by co-conspirators dated the conspiracy back to June of 1998. The acts of this 1998 conviction did occur in May of 1998, so yes, Your Honor. They did occur within 12 days' time period. But the difference here is, as the court told us in Hodge... Did the district court judge during sentencing discuss those factors, the time period and the similarities in coming to the conclusion that the 1998 conviction was not, in fact, part of relevant conduct for the incident offense? Yes, Your Honor. This exact issue was before the sentencing court. The defendant objected to the PSR, and the district court dealt with that. In its decision, the district court recognized and actually believed that the government's position at trial had been that this 1998 conviction was relevant conduct. And he asked the government, well, shouldn't I count this as relevant conduct? That was your position. The government explained that while it had made arguments regarding the similarity, that was specifically to indicate the reliability of the evidence as required for admission under Rule 404B. But the government maintained that at no point did it believe or assert the position that that 1998 act was part of the offensive conviction, or part of a single course of conduct. And the reason for that is that there was no evidence, there was nothing in the investigative materials to link that one sale to an undercover police officer in May of 1998 to the conspiracy which began in June of 1998. May 19th of 1998? Yes, Your Honor. May 19th of 1998. So two weeks before the conspiracy? Yes, presumably. The 1998 conspiracy dated back to June of 1998, but involved two grams of sale per month. We don't know exactly what date that sale was made in June of 1998. So assuming for the defendant that it was only 12 days and that conspiracy began on June 1st of 1998. Now, under Hodge, this court told us that the mere fact that both involve drug distribution is not enough to support treating it as relevant conduct. And we point that out today because the government acknowledges that they were both drug transactions. They were. But they did, in May of 1998, the defendant sold crack cocaine. It was a statement of a co-conspirator by the name of Bowser that dated the conspiracy back to June of 1998. He is the only co-conspirator whose conduct went between 1998 and 2000. And all of the drug quantity alleged there was powder cocaine, not crack cocaine. So we are dealing with a different drug in that context in looking at that similarity of time. Additionally, in Hodge, the court relied heavily on the abundance of evidence indicating the regularity of sales that connected that prior drug transaction with the transactions that were part of the offensive conviction. And, Your Honors, we don't have that today. There was no evidence in the investigative materials or in the record to indicate, to connect the May 1998 action with the conspiracy that began in June of 1998. And it's that lack of evidence that we see in Application Note 9 of Section 1B1.3. Were there any, during the life of the conspiracy, was crack cocaine one of the drugs that was distributed, or was it just pure powder? The indictment alleges crack cocaine. So it alleges, starting in 2000, the defendant, there were co-conspirators and evidence to indicate that the defendant was dealing in crack cocaine from 2000 up until 2011, I believe. But the 1998 and 1999 relevant conduct only related to cocaine. So I point out that difference to explain that it was a longer period of time before the defendant. We have evidence that the defendant was dealing in crack cocaine in 1998. He did not start dealing again in crack cocaine until 2000. And under Hodge, there are three factors that we consider, and this is also in Application Note 9 of 1B1.3, you consider the similarity, the regularity, and the distance in time. So I'm trying to articulate how those different factors vary based on the drug that was actually sold in May 1998. Your Honors, I would also like to point out that with regard to not counting this as relevant conduct, the defendant bears a burden to demonstrate prejudice, to show that this, in fact, affected the sentence that he could have received. Now, in this case, if this was sent back to the District Court, we know because the District Court told us that the District Court would impose the same sentence, even as an alternate variant sentence, even if we were presuming that there was procedural error. But if the defendant were granted relief, we looked to whether or not the sentence imposed, which effectively was a 324-month sentence. He got 324... This is basically a Savion Matute Hargrove argument. Yes, Your Honor. Essentially, if we're conceding that there was some sort of procedural error, which we're not, but if there were, we make the argument that it would still be substantively reasonable. And under this Court standard, you look to two things. Would the Court have imposed the same sentence? Think clearly from the record he says he would have. And two, would the sentence imposed be substantively reasonable? Now, in this case, if the defendant were to win his argument, he was already given the highest base offense level based on the significant drug quantity attributed to him. So he would remain at a total offense level of 38. His criminal history category, he correctly asserts, would drop from a criminal history category 3 to a level 2. This would affect his advisory guideline range, making his advisory guideline range 262 to 327 months in prison. Now, I remind the Court the defendant was sentenced to 324 months on counts 1 and 4, and 240 months on counts 2 and 3. Terms to run concurrently. So effectively, he was sentenced to serve 324 months. A sentence that would be within the revised advisory guideline range if the defendant were to obtain the relief he seeks. So under Savion Motute and looking at Hargrove and this Court subpoena Montez Flores, the sentence imposed would be substantively reasonable. So the defendant has failed to demonstrate any prejudice or any error that can be corrected by the District Court. Seeing that the Court has no further questions, in closing, we want to express that what the District Court did is not improper. The Court did not err in admitting any of the four recordings, nor did it err in excluding the 1998 conviction from relevant conduct. The reality is, one, that there was overwhelming evidence at trial to support the defendant's conviction. And two, even if this Court were to find that the 1998 conviction were relevant conduct, his defendant's 324-month sentence is within the revised guideline range anyway. Therefore, we ask this Court to affirm the District Court. Thank you. Thank you very much. Mr. Patrick, you have a few minutes in rebuttal, if you'd like to take that. Thank you, Your Honor. I didn't address the sentencing issues, but since Judge Thacker has mentioned it and my opposing counsel has, I'll just address it very briefly. We didn't address the sentencing issue, the third issue, largely because we acknowledged in the brief the Savion Motute problem. The District Court certainly said that at trial, in sentencing. Although, in looking at the record and looking at Hodge, as we cited it, that was a situation where a Virginia-based crack or drug case found that three years prior, a drug distribution in New York was relevant conduct. All of the evidence in this case is much closer in time to the same kind of drugs, same place, same small town in North Carolina. If it's relevant conduct in Hodge, it ought to be relevant conduct in New York. But again, the District Judge indicated he would give the same sentence. And that's largely the reason I didn't want to take the Court's time in my original argument on that. Going back to the points that they made in terms of the three recordings, the government asserts that the MacMillan factors were demonstrated. We assert just the opposite, that very few of the MacMillan factors were asserted. And I'll just run down them very quickly. Whether the recording device was capable, I don't think there was testimony about that on any of the three, except for the first one where they said the recording device was malfunctioning for a good part of the time. Was the operator competent? That's the second factor. I don't think there's any testimony on that. Was the recording authentic and correct? There was some testimony but not consistent testimony about that. Was there any change made to the recording afterwards before it was produced in court? There was no testimony on that. Was the recording preserved? That is testimony from the agents that we kept it in a safe place, that sort of thing. There's no testimony about that. Were the speakers ID'd? As Judge Thacker acknowledged, on the first recording they did ID the speakers, but they didn't do it on the second and third recordings. And was the last factor, was it voluntary? I think the context of it indicates that, yes, on all three it was voluntary. Wasn't it the same speaker on the second and third recordings? I'm sorry? Wasn't it the same speaker on the second and third recordings? Well, the same person was wearing the wire, but there was no testimony about who the other speakers were or identification of the other speakers on the second and third. If you look at the cases, you know, we cited a lot of cases in the brief. I think you'll find that when they cite what the foundational requirements and all the ones that they've upheld, there's more, significantly more than the foundation in this case. So we, again, assert that under Rule 103, we didn't have to make more than a general objection. If you take a look at whether the proper foundation was made, that it was not, and as a consequence, it was not harmless error and that this case should be remanded for a new trial in the district court. Thank you very much. Thank you, Mr. Patrick. The court notes that your court appointed, and we wish to express our appreciation to you for taking that obligation. Thank you, Your Honor.
judges: G. Steven Agee, Henry F. Floyd, Stephanie D. Thacker